CASE 106—ACTION BY THE JEFFERSON SOUTHERN POND DRAINING CO. AGAINST GEORGE HOERTZ, TO COLLECT AN ASSESSMENT FOR DRAINING PURPOSES.—FEB. 10.

# Hoertz v. Jefferson Southern Pond Draining Company.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHY. DIV. NO. 2—STERLING B. TONEY, JUDGE.

JUDGMENT FOR PLAINTIFFS. DEFENDANT APPEALS. AFFIRMED.

SWAMP LANDS—RECLAMLTION—DRAINAGE .CORPORATIONS—ORGANIZATION—STATUTES—CONSTITUTIONALITY—DUE PROCESS OF LAW—SPECIAL ASSESSMENTS—VALIDITY—ESTOPPEL.

1. 2 Acts 1857-58, p. 124, c. 518, as amended, creating the Jefferson Southern Pond Draining Company for the purpose of draining and reclaiming swamp land in Jefferson county, which had been worthless for agriculture and a menace to the health of the residents of the surrounding country, and giving to such company a lien for special taxes assessed on surrounding property benefited, was not unconstitutional, as granting special privileges for which no public service was rendered.

2. 2 Acts 1857-58, p. 124, c. 518, created a corporation for the purpose of draining certain swamp lands, under which the corporation proceeded to construct a system of ditches in a district in Jefferson county known as "Pond Settlement," after which an amendment was passed by 3 Acts 1887-88, p. 907, c. 1552, assessing a tax on property benefited, and recited that the corporation had constructed such system of ditches, which it would redound to the public health to maintain and extend. HELD, that such amendment constituted a legislative recognition that such Pond Settlement was the district to be drained, so that

an objection that the corporation's charter was defective, in that the lands were not specificallly located, was unsustainable.

3. 2 Acts 1857-58, p. 124, c. 518, as amended, incorporated a draining company for the reclamation of swamp lands, to be paid for by a special tax levied on the property benefited. The tax was required to be assessed by commissioners after notice by advertisement and by posters, after which the persons taxed were authorized to appear on a day fixed and make their objections in the chancery court, to which the commissioners were required to report their assessment. HELD, that the fact that notice of the assessment was given by advertisement and by posters, instead of actual service, did not render the tax invalid, as a taking of private property without due process of law.

4. The review of the assessment so levied was a matter of judicial procedure which could properly be imposed on the chancery court.

5. Where, in a proceeding to collect a special drainage assessment, it was alleged that defendant and his grantors procured the legislation under which the assessment was made, and defendant only denied that he was instrumental in obtaining such legislation, he, having purchased his land with its burdens, was estopped to claim that such legislation procured by his grantors was unconstitutional.

6. Where the charter of a drainage company and its amendments were passed in conformity with the Constitution of 1850, the levy of assessment authorized by such acts was not affected by the Constitution of 1891.

WM. McKEE DUNCAN, ATTORNEY FOR APPELLANTS.

1. The appellants who bought the land in controversy long after the assessment had been made under the act of 1888 can not be said to have been benefited by it, for whatever benefit had accrued to the land had accrued long prior to their purchase, and it follows that they paid for these benefits in the increased price of the land.

2. The appellee admits by the allegations of its petition that the grantors participated in procuring the original act, and this statement or admission necessarily excludes the idea that the subsequent grantors who came into the title at a later period (i. e. appellants), could have participated in the original act, and therefore, this admission is sufficient to dispense with proof of the allegations of appellants in the fourth paragraph of their answer.

3. There is no proof in the case that the appellants in person took any part in or consented to the action of the president

and directors in imposing this tax, and under the rule as laid down in Harttage case appellee has not made out the estoppal against the appellants.

4. We contend that the court can not add language to a legislative act to give it a meaning which the Legislature and the the parties who procured the act, with all the lights before them, chose not to give it. If the language is used but is doubtful, the courts can construe it.

5. In the process of showing how the taxes in the case were due the essential facts are what boundary did the corporation have the right to tax, where it was located, and was the land of appellant within this boundary and liable to be assessed for this tax?

6. In the absence of any description or reference to a taxing boundary in the petitions, an exhibit, if one should be filed, will not supply the missing allegation. But when neither the proceedings of the Jefferson Circuit Court with the survey, nor the act of 1868 establishing a boundary are referred to or filed, a fatal defect in these petitions appears.

7. Even if these special acts do not have to be pleaded, yet as appellee has undertaken to plead them, and rely on them, it is bound by the admission that the ones named are the only ones it relies on. In the nature of the case a specified territorial limit is absolutely essential to the right to tax, otherwise the right to tax would be co-extensive with the State. The Constitution recognizes this necessity when it says in section 171 "that the taxes shall be uniform within the territorial limits of the power imposing the tax."

W. W. THUM and ALBERT S. BRANDEIS, ATTORNEYS FOR APPELLEE.

POINTS AND AUTHORITIES.

1. Charter of Jefferson Pond Draining Co., Act Feb. 16, 1838, chap. 922; amendment to charter, Act Feb. 20, 1839, chap. 1298; Charter Jefferson Southern Pond Draining Co., Act Feb. 15, 1858, chap. 518; amendment to charter, Act March 9, 1868, chap. 1164: amendment to charter, Act March 8, 1872, chap. 485; amendment to charter, Act Feb. 26, 1873, chap. 248; amendment to charter, Act March 6, 1878, chap. 287; amendment to charter, Act April 15, 1884, chap. 788; amendment to charter, Act March 26, 1886, chap. 426; amendment to charter, Act May 4, 1888, chap. 1552.

2. Appellants are estopped from attacking the validity of the legislative acts under which the taxes and assessments sued for were imposed and apportioned. Cypress Pond Draining Co.

Hoertz v. Jefferson Southern Pond Draining Co.

v. Hooper, 2 Met., 350; Scuffletown Fence Co. v. McAllister, 12 Bush, 315; Ferguson v. Landrum, 1 Bush, 548; Same v. Same, 5 Bush, 230.

3. The drainage of pond or swamp lands to promote the public health or public welfare or convenience is within the power of the Legislature, and the cost thereof may be imposed upon the lands benefited thereby.  Cooley on Taxation; 10 Amer. & Eng. Ency. Law, 222, 223; Scuffletown Fence Co. v. McAllister, 12 Bush, 315; Duke v. O'Bryan, 100 Ky., 710; Hagar v. Reclamation Dist., 111 U. S., 509; Davidson v. New Orleans, 96 U. S., 97.

4. The Legislature may create the taxing district and delegate the power. to construct the improvement and apportion the cost to an agency, as a corporation created for that purpose. O'Reilly v. Kankakee Valley Draining Co., 32 Ind., 169.

5. The statute creating the district and authorizing the drainage need not declare the  public benefit, this being a judicial question to be determined in the proceedings.  McReynalds v. Smallhouse, 8 Bush, 456; Allison v. Louisville, &c., Railroad, 10 Bush, 1; Duke v. O'Bryan, 100 Ky., 710.

6. The amendment of May 4, 1888, affords the property owner an opportunity to be heard, upon notice of publication, before the tax or assessment becomes binding, and does not take his property without due process of law.  Davidson v. New Orleans, 96 U. S., 97; Hagar v. Reclamation Dist., 111 U. S., 509; Lent v. Tillson, 140 U. S., 316; Spencer v. Merchant, 125 U. S., 345; Fallbrook Irrigation Dist. v. Bradley, 164 U. S., 113, 174; Bauman v. Ross, 167 U. S., 548; Paulsen v. Portland, 149 U. S., 30; Cooley on Taxation, 3d ed., 629, 68.

7. The review of an assessment or apportionment for taxes or the cost of local improvements is a judicial proceeding and could properly, under the Kentucky Constitution of 1850, be imposed upon the Louisville Chancery Court.  Cooley on Taxation, p. 786; Burroughs, Taxation, p. 238; Wilson v. Karle, 42 N. J. L., 612; Cin. &c. R. R. v. Com., 81 Ky., 511; Cassidy, Aud's Ag't v. Young, 92 Ky., 227; Louisville Water Co. v. Clark, 94 Ky.,   53.

8. The adoption of the Constitution of 1891 of the enactment of the statutes thereunder did not repeal the charter of appellee or deprive it of the right to enforce the taxes or assessments levied and made a lien in the year 1888.  Constitution of 1891, schedule 1, 2; Long v. City of Louisville, 97 Ky., 364.

9. Acts of the General Assembly constituting the charter of the appellee need not be specially pleaded, for the courts are required to take judicial notice of them.  Kentucky Statutes,

sec. 1624; Town of Central Covington v. Weighaus, 19 Ky. Law
Rep., 1979.

10. The judgments ought to be affirmed because the records
on appeal are incomplete in that they do not contain a material
part of the evidence in the court below, and because the tran-
scripts were not prepared on schedules as prescribed by sec.
737 of the Civil Code. Terrell v. Rowland, 86 Ky., 75; Beau
v. Meguiar, &c., 16 Ky. Law Rep., 715; Huffaker v. Bank, 13
Bush, 648; Bowman v. Holloway, 14 Bush, 426; Sacra's Heirs
v. Carter, 22 R., 124.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

The Jefferson Southern Pond Draining Company was in-
corporated by an act of the Legislature of Kentucky in 1858
(2 Acts 1857-58, p. 124, c. 518), and there were amendments
to the original act in 1872, 1873 (1 Acts 1873, p. 299, c. 248),
1878 (1 Acts 1877-78, p. 351, c. 288), 1884 (1 Acts 1883-84,
p. 1402, c. 788), 1886 (1 Acts 1885-86, p. 1059, c. 426), and
1888 (3 Acts 1887-88, p. 907, c. 1552). The proceedings out
of which arose the controversy at bar were had under the
charter as amended in 1888. The appellee company was in-
corporated for the purpose of draining a large body of
swamp lands about four or five miles south of Louisville, in
Jefferson county, Ky., which, by reason of the water con-
stantly standing upon them, were worthless, and, by the
consequent propagation and dissemination of malaria, were
a menace to the health of the citizens of the surrounding
country and of the city of Louisville. The drainage of these
lands was to be effected by the digging of deep and wide
ditches at intervals through them at sufficient grade to carry
off the water, so that the owners between the main
ditches could, by tiling, thoroughly drain and ren-
der productive their before worthless land. The dig-
ging of these ditches, of necessity, required money,
and this was to be raised by assessment and taxation au-
thorized by the charter. By the amendment of 1888, the

system of taxation was to be a graded one, in accordance
with the benefits received, the maximum tax being 40 cents,
and the minimum 10 cents, per acre; and it was provided
that upon the petition of more than one-half of all the land-
owners within the boundary of the district established,
signed either by themselves, their agents, their guardians,
or personal representatives, the Jefferson county court
should appoint a board of commissioners consisting of three
landowners resident in Jefferson county, and not interested
in the Jefferson Southern Pond Draining Company, nor
owning any of the lands within the boundary, and each over
25 years of age; that these commissioners should on the 1st
day of July, 1888, rate, assess, apportion, charge, and fix up-
on the land within the boundary of the district a tax for the
succeeding ten years of not more than 40 cents nor less than
10 cents per acre, in proportion to the benefits conferred,
fixing the rate at such amount per acre as should
be fair and just in each case, and report their as-
sessment and apportionment in writing to the Louis-
ville chancery court; the report to be filed with the
clerk of the court   This assessment and apportionment
was to be in lieu of the annual assessment and apportion-
ment theretofore authorized by the charter.   The commis-
sioners, in making the assessment and apportionment, were
required to enter on the assessment roll the names of all
persons who at the time were the owners or holders of lands
liable to be assessed under the provisions of the charter,
and opposite the names of such persons the separate tract
or tracts so owned or held, with the number of acres, as
near as practicable, the name of the nearest resident there-
to, the rate of taxation per acre, and the aggregate tax
upon each tract or parcel of land for each of the ten years.
The commissioners were required to publish in one English

and one German daily newspaper printed and published in Jefferson county, by insertions made in each of them once per week for three consecutive weeks, a notice of the assessment and apportionment, and the fact that it had been filed with the clerk of the Jefferson chancery court. Copies of the notice were required to be posted at various places in Jefferson county. Within thirty days after the filing of the report, any person feeling himself aggrieved by reason of the assessment could file with the clerk, as authorized, his complaint, in writing, specifying the land and the alleged excess or injustice. As soon as practicable after the expiration of thirty days, the clerk was required to set the case for hearing, and of the justice or injustice of the apportionment the court was to determine. The taxes provided for in the act were to be assessed as of the 1st day of July, 1888, and to be payable to the Jefferson Southern Pond Draining Company on or before the 1st day of October of the year for which the assessment was made, and become due on the 1st day of December thereafter, beginning with the year 1888, and so on for each of the ten years for which the levy and assessment was made. The corporation was given a lien for all taxes upon the land assessed, and upon all the personal property of the owner or owners found upon the premises, not exempt from execution, attachment or distraint, which was authorized to be enforced by equitable action in the Jefferson chancery court The appellant or his grantors owned the land in question, which was within the tax limits established by the charter of appellee; and, in 1888, commissioners were appointed, who assessed all of the land within the tax district, including that now owned by appellant, for the period of 10 years next succeeding, and filed their report in the Jefferson chancery court. No complaint having been made by the then owner

of the land in question of any injustice done him, the pro-
ceedings as to him were confirmed and approved; and, the
appellant having failed to pay the assessment, this action
was instituted by the company in the Jefferson circuit
court, chancery branch, to enforce its lien. No question
is raised by the appellant as to the regularity of the pro-
cedure by the appellee under its charter. The objections
made are fundamental, not technical. Upon the trial of the
case, the chancellor granted the relief prayed for in the peti-
tion, giving a judgment for the sum of the taxes due, and en-
forcing the lien.

The appellant insists that the legislation creating the
corporation is unconstitutional, in that it grants special
privileges for which no public service is rendered. It is
too late to question that the draining of vast swamps, and
thereby improving the health of the whole community, is
a matter of public concern. All public works of the nature
of the one under discussion are attended by some private
benefit not enjoyed by the general public, but this private
benefit does not take from the work the quality of being
for the public service. It is hardly necessary to cite au-
thority upon a proposition so obvious, and of which the
books are so replete. Perhaps the last utterance of this court
on the particular subject in hand is contained in Duke, etc.,
v. O'Bryan, etc., 100 Ky., 710, 19 R., 81, 39 S. W., 444, 824,
wherein the question is thoroughly discussed, and the dis-
tinction between a public and a private benefit, and the
effect of the existence of the latter in public works, is point-
ed out. The amendment of 1888, in its preamble, recites the
public benefit of the act as being the promotion of the
health of the community, and this must be taken as true in
the absence of any evidence in the record contradicting it.

A second objection to the charter is that the lands to be

drained are not specifically located.  This, we think, is
error, but, conceding it to be true, the district to be drained
was located under the original charter, and the amendments
recognized this as being the locality involved.  The act of
1888, under which the tax in question was assessed, speaks
of and recognizes the district as located, and recites the
fact that the corporation has already a system of ditches
constructed, which it will redound to the public health to
maintain and extend.  This legislative recognition of the
Pond Settlement in Jefferson county as being the district to
be drained is sufficiently explicit to refute the claim of un-
certainty as to the subject of the legislation.

Nor is the levy and collection of the tax the taking of
private property without due process of law, within the
meaning either of the Constitution of this State, or of the
fourteenth amendment of the Constitution of the United
States.  After the assessment by the commissioners, they
were required to, and did, report their action to the Jeffer-
son chancery court, and appellant was given his day in court
to show cause against the levy of the obnoxious tax upon
his land.  This he failed to do, and, under the terms of the
charter he was concluded by the judgment.  The fact that
the notice was by advertisement in the press and by posters,
instead of actual service, does not militate against the con-
clusiveness of the judgment.  The proceedings taken in this
case with regard to the levy of the assessment, and the
right and opportunity of the appellant to show cause
against its validity, are substantially the same as those
with reference to every other method of taxation, either
State, municipal or local.  In the levy of taxes for the sup-
stated period, and notice is given to all concerned of the
port of the municipality of Louisville, the assessment is
made by the assessor.  The board of equalization meets at a

time when their complaints may be heard. No actual service of this notice is ever had, nor could it be given in any other way, except through the public press, and yet the rights of the citizens are concluded by the final action of the board of equalization. Substantially the same process is had where improvements of the public streets and highways are made. After the work is done by the contractor, a day is fixed, and notice given through the public press, to all concerned, of the time and place at which the board of public works will take up the matter of receiving and hearing complaints against it. No other notice is given or is possible than through the public press. The argument of appellant, if successful, would overturn our whole system of levying, assessing and collecting taxes. That the procedure adopted is not inimical to the provisions of the fourteenth amendment of the Constitution of the United States with regard to the taking of property without due process of law is shown by the following adjudications: Davidson v. New Orleans, 96 U. S., 97, 24 L. Ed., 616; Hagar v. Reclamation Dist., 111 U. S., 701, 4 Sup. Ct., 663, 28 L. Ed., 569; Lent v. Tillson, 140 U. S., 316, 11 Sup. Ct., 825, 35 L. Ed., 419; Spencer v. Merchant, 125 U. S., 345, 8 Sup. Ct., 921, 31 L. Ed., 763; Fallbrook Irrigation Dist. v. Bradley, 164 U. S., 113, 174, 17 Sup. Ct., 56, 41 L. Ed., 369; Bauman v. Ross, 167 U. S., 548, 17 Sup. Ct., 966, 42 Law Ed., 270; Paulsen v. Portland, 149 U. S., 30, 13 Sup. Ct., 750, 37 L. Ed., 637; and Cooley on Taxation (3d Ed.) pp. 629, 68.

The objection that the review of the assessment made by the commissioners is not a judicial procedure, and could not, therefore, be imposed upon the Jefferson chancery court, is untenable. Reviewing the legality and validity of the actions of parties in all matters, public and private, is

eminently a judicial function; and we do not know how the charter could have better secured the rights of appellant than by giving him an opportunity to show cause against the assessment, in the first instance, in the very court which finally adjudicated upon the procedure of which he now complains. Cooley on Taxation (3d Ed.)    p. 786; Burroughs on Taxation, p. 238; Wilson v. Karle, 42 N. J. Law, 612.

But if we were less certain of the constitutionality of the act under review, the case must be affirmed against appellant on this point for the reason that he or his grantors procured the legislation in question, and were the recipients of its benefits. It is alleged in the pleadings of appellee that appellant and his grantors procured the charter and its amendments, and obtained the appointing of the commissioners and the levy of the assessment, and were its beneficiaries. The appellant was content with denying that he did the things charged in estoppel upon him and his grantors, leaving undenied the whole charge as against his grantors. The legislation and the acts thereunder, constituting the basis of appellee's claim herein were obtained and done in 1888 and prior thereto. The work was done and the benefits accrued then and shortly thereafter. The lien was fixed and became a public record, of which appellant had notice when he subsequently purchased. He can not now successfully claim that his land was not bound in the matter in question by the action of those who owned it at the time. He took the land with its burdens, and he is bound by the estoppel of his grantors. That one who procures unconstitutional legislation, and receives its benefits, is estopped to deny its validity, is well settled in this State. Cypress Pond Draining Co. v. Hooper, 2 Metc., 350; Scuffletown Fence Co. v. McAllister, 12 Bush, 315; Ferguson v.

Landrum, 1 Bush, 548; Same v. Same, 5 Bush, 230, 96 Am. Dec., 350.

The Constitution of 1891 did not repeal the charter of appellee, nor did it expire under the schedule of that instrument by the lapse of five years after 1891. All the acts and proceedings had with reference to appellee's claims were performed under the Constitution of 1850, and were not affected by that of 1891.

The evidence in this case, without contradiction, shows that the land of appellant has been vastly benefitted by the tax which he seeks to escape. Before drainage, it was worth from $2 to $5 an acre, and after drainage from $40 to $50 an acre. Before, no crop could be successfully raised upon it; afterwards, its productivity was so greatly magnified as to produce from 60 to 80 bushels of corn per acre, and to yield crops of hay worth from $25 to $35 an acre. But the public has been benefited in a still greater degree, although it can not be expressed in terms of money. Before drainage, the district was uninhabitable because of the prevalence of malaria; now, the health of the entire district is as good as that of any other in the State. Before, the health of the city of Louisville was seriously impaired by malaria disseminated from swamps and morasses which are now fruitful fields, and it is said, upon high medical authority, that the work of appellee has done more for the health of the municipality than its whole sewerage system, costing millions of dollars.

For these reasons, the judgment of the chancellor is affirmed.

Petition for rehearing by appellant overruled.