## Handley, et al. v. Graham, et al.

(Decided March 5, 1920.)

### Appeal from Hickman Circuit Court.

1. Drains—Alternative Methods of Reclamation.—By the drainage act of 1912 as amended and the drainage act of 1918 two independent alternative methods for the reclamation of wet lands are afforded.

2. Drains—Viewers' Report—Under the provisions of the 1918 drainage act (sec. 2380-b, Kentucky Statutes) a proceeding begun under the provisions of the 1912 act may be transferred to and completed under the provisions of the 1918 act upon motion of the petitioners or the board of drainage commissioners. Hence the court did not err in directing the viewers, appointed under the 1912 act, to make report, &c., in accordance with the 1918 act.

3. Drains—Viewers—Order Appointing—Oath.—It is not necessary that the order appointing viewers recite the fact that they took oath, &c., as required by law, and a viewer having performed the services required it will be presumed that he complied with all the provisions of the law before entering upon the discharge of such duties, in the absence of a showing to the contrary.

4. Drains—Notice—Sufficiency.—The publication and mailing of notices to landowners of the proposed establishment of the drainage district, as provided by the 1918 act, held sufficient to afford landowners due process of law remedy for any infringement of their property rights and to sustain the court's jurisdiction.

5. Drains—Jury—Constitutional Guaranty of Trial By.—The 1918 act divides the proceeding to establish and organize a drainage district into two distinct periods, the first of which is merely an inquiry to determine the necessity for the formation of the district and which is completed by a judgment establishing the district. Held that the constitutional guaranty of a trial by jury does not attach to the first period of such a proceeding.

6. Jury—Constitutional Guaranty of Trial by.—Where a proceeding is purely statutory and was unknown to the common law the constitutional guaranty of a trial by jury does not apply.

7. Drains—Trial Upon Appeal.—The act of 1918 provides that trials upon appeal to the circuit court from the county court, which may be taken at different stages of the proceeding, shall be de novo, and shall be tried and judgment rendered as though "originally commenced in the circuit court," which also had concurrent, orig-

inal jurisdiction of the proceeding. Hence the circuit court did not err in retaining jurisdiction once acquired instead of remanding the case to the county court for further proceedings necessary to a final determination of the case.

E. T. BULLOCK and R. B. FLATT for appellants.

J. H. SHELTON for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This proceeding to establish a drainage district on Bayou de Chien creek in Hickman county, Kentucky, was filed in the Hickman county court by appellees, H. H. Graham and sixty-four others, landowners within the proposed district, as is authorized by section 2380 of the Kentucky Statutes enacted at the 1912 session of the legislature; and viewers were appointed under that act before an amendment thereof and a new act relating to the same subject enacted at the 1918 session of the legislature, became effective. After these enactments became operative, but before the viewers had filed their report, the petitioners, on the 15th day of July, 1918, entered a motion that an order be entered directing the viewers to make their report under the provisions of the 1918 drainage act instead of under the provisions of the 1912 act. This motion was sustained and an order entered directing the viewers to make a survey and view the lands embraced in the proposed drainage district and to make their report "under and pursuant to the provisions of the act of the legislature of the Commonwealth of Kentucky at its session in 1918 relating to the drainage of lands, &c., as approved March 26, 1918, being chapter 64 of the acts of said session," and section 2380b, volume 3, Kentucky Statutes; and ordering that all further proceedings in the action should be under the provisions of the 1918 act.

Thereafter the viewers as ordered made their report under the provisions of the 1918 act. It is agreed that the clerk of the county court gave the notices by publication and by mail as provided by subsection 6 of the 1918 act. Appellants, S. T. Handley and seventeen others who owned land in the proposed district, appeared and filed a special demurrer questioning the jurisdiction of the court, which was overruled. They then filed exceptions to the viewers' report, to which the appellees filed general and special demurrers, which the court sus-

tained except insofar as they traversed the first and second paragraphs of the viewers' report. The exceptors declined to plead further and refused to introduce any evidence, whereupon the court rendered a judgment confirming the viewers' report and establishing the proposed drainage district. From this judgment the exceptors appealed to the circuit court, where, upon a *de novo* trial of the same questions, a like judgment was entered, from which they have prosecuted this appeal.

The judgment is attacked upon the following grounds:

1. The court erred in ordering the viewers to report and further proceedings to be had under and in accordance with the provisions of the 1918 drainage act instead of the 1912 act, under which the action was begun and the viewers appointed.

2. The viewers were not legally appointed.

3. Notice by publication, &c., as required by the 1918 act, was insufficient to give the court jurisdiction of appellants or their lands.

4. The 1918 drainage law is unconstitutional because it authorizes the taking of private property for public purposes upon notice by publication and without personal service and therefore without due process of law.

5. The act is unconstitutional because it authorizes the creation of a drainage district with power to tax, take property, &c., without affording property owners to be included, a trial by jury as to whether or not the district shall be created.

6. The circuit court erred in embracing in the judgment establishing the district an order retaining jurisdiction instead of remanding the cause to the county court for such further proceedings as were necessary to organize the established district.

1. We but recently decided in the case of Board of Drainage Commissioners of McCracken County v. Lang, Judge, 187 Ky. 123, that the drainage act of 1912, as amended, and the new drainage act adopted at the 1918 session of the legislature, are separate, independent, alternative laws for the reclamation by drainage of wet lands, affording optional methods for accomplishing the same purpose; that a proceeding begun under the 1912 act may be transferred to and completed under the 1918 act by the petitioners of the board of drainage commis-

sioners, at any time while it is pending in court; and that when a motion to this effect is made by the petitioners, after the viewers have been appointed and before they have reported, the court must grant the request and the proceedings shall thereafter be under the provisions of the 1918 act, rather than the 1912 act. Section 54 of the 1918 act so provides in terms that are mandatory upon the court in which the proceeding is pending.

The court, therefore, did not err, upon motion by the petitioners, in directing the viewers to make their report and other proceedings to be had in accordance with the provisions of the 1918 act.

2. The second complaint, that the viewers were not legally appointed, is based solely upon the wording of the order entered by the court with reference to one of the viewers, which, insofar as pertinent, is as follows:

"It is further ordered that Sam Beckham and John M. Wilson . . . be and they are hereby appointed viewers herein, whereupon they came, accepted same and took the oaths required by law. Said viewers shall meet at Creek Bridge at the Graves county line on the 8th day of April, 1918, . . . and proceed with J. A. Porter, a surveyor and civil engineer . . . to make accurate survey of the line of said ditch and proposed drainage district, &c., from its source to its outlet, and they will proceed to perform such duties as are required of them under Kentucky Statutes, section 2380 and its subsections, and as required by law, and they will make due report, &c."

It is urged that this order appointed only Beckham and Wilson and did not appoint J. A. Porter as viewer, and there was therefore no appointment of a board of viewers as required by law. The section under which they were appointed (2380-2) provides:

"When said petition and bond shall have been filed with the county clerk the county judge, whether at a regular term time or not, shall thereupon appoint a competent surveyor and drainage engineer and two resident freeholders of the county, the freeholders being persons not named in the petition as interested and not related to any of the parties so named, who shall constitute the board of viewers to examine the land named in the petition and to make a preliminary report."

It is conceded that Beckham, Wilson and Porter possessed the qualifications required by the statute and it

will be noticed that the statute requires the county judge to appoint two freeholders and a surveyor "who shall constitute the board of viewers." It is therefore apparent that the county judge, by the order, did appoint three qualified persons whom the statute declares shall constitute the board of viewers, and that the order was a literal compliance with the requirements of the statute.

Complaint is also made that the order does not recite that Porter accepted the appointment and took the oath required by law. It was not necessary that the order recite this fact, or that it should appear of record under the 1912 act. Porter, after his appointment, performed the services required of him as a viewer, which sufficiently attests his acceptance of the appointment; and, in the absence of a showing to the contrary, it will be presumed that he took the oath required by law before entering upon the discharge of his duties as a viewer.

3. The sole basis for the third and fourth contentions that the court was without jurisdiction and that the drainage law of 1918 authorizes the taking of private property without due process of law (aside from the question of a trial by jury, which will be considered separately), is the alleged insufficiency of the notice provided for in the act, section 2380b-6, volume 3, Kentucky Statutes, and admittedly given in strict compliance therewith.

It is quite apparent, therefore, that but one question is presented by the two complaints, since if the notice is sufficient to support a due process of law adjudication, it necessarily must be sufficient to sustain the court's jurisdiction because the very first essential of due process is jurisdiction. In similar drainage proceedings, upon notice by publication alone and without the additional notification by mail required by this act, this court has twice held that affected landowners were afforded a due process of law remedy for any infringement of their individual property rights so far as notice was concerned and without reference to a trial by jury; first, in Hoertz v. Jefferson Southern Pond & Drainage Co., 119 Ky. 824, 84 S. W. 1141, and more recently in Board of Levee Commissioners v. Johnson, et al., 178 Ky. 287. A reconsideration of the question confirms the conclusion reached in those cases and we need not again set forth the reasons and authorities upon which that conclusion is rested.

Since, therefore, the notice by publication is sufficient for a due process of law taking of property for taxes, assessments, &c., as may be later done in this proceeding, it necessarily follows it is sufficient for all preliminary steps necessary to the ultimate accomplishment of that end, including the formation of the district in which the power to tax, &c., is lodged. The judgment appealed from decided only that the district should be created, as will presently appear, and clearly the notice was sufficient for a due process of law determination of that question. We do not, of course, decide that the legislature had to provide a due process of law method for the establishment of such a district, for that question is not here, but only that the method provided is such so far as notice is concerned.

4. Before we can decide whether or not a trial by jury was imperative under constitutional guaranty to warrant the judgment appealed from it will be necessary to ascertain what questions were involved and determined by that judgment since the right to a jury trial does not extend to all cases, but is limited now as it was at common law.

The act of 1918 clearly divides the one proceeding to establish and organize a drainage district into at least two separate and distinct periods. The first period relates to and deals with the establishment merely of the proposed district, the other to its organization and the assessment of benefits, damages, taxes, &c. The first period is completed by a judgment establishing the district, which is final and appealable (section 2380b-10, volume 3, Kentucky Statutes), and the second is completed when a judgment is entered organizing the district as such, which judgment is also final and appealable. (Section 2380b-18, volume 3, Kentucky Statutes.) The first judgment is entered upon the viewers' report as to whether a drainage district shall be established, and after persons whose lands are included or affected have had an opportunity to be heard upon exceptions and objections. The second judgment is entered upon the report of the appraisers as to damages, benefits, classifications of land, &c., after persons included in or affected by the proposed improvement have had an opportunity to be heard upon exceptions and objections. One notice, which the clerk is required to give by mail and publication (section 2380b-6, vol. 3, Kentucky Stat-

utes). not only brings the persons so notified into the case and under the jurisdiction of the court upon the question of organization of the district, but also upon the question of assessments, &c., and for all purposes until the action is finally terminated.

The judgment appealed from herein only declares the necessity for and establishes the district and does not determine the damages or benefits to landowners included in or affected by the proposed improvement, nor does it attempt to determine or levy taxes upon the land, which questions cannot possibly arise until in the second period of the proceeding, which has not been reached as yet in this case.

Hence we have before us upon this appeal such questions only as could arise and were determined in the first period of the proceeding, which by the clear terms of the act is restricted to a determination of whether or not a public drainage district shall be established; and this by subsection 5 of the act, section 2380b-5, volume 3, Kentucky Statutes, is made to depend upon whether the proposed improvement (1) will result in public benefit or utility; (2) will promote the public health, convenience, or welfare; or (3) will benefit the lands to be included in the district.

The questions of taxes, assessments, and the taking of such lands as are necessary for the proposed improvement are all deferred until the second period of the proceeding and landowners included or affected are afforded an opportunity to be heard when these questions come up in the second period upon notice that we have held is sufficient to give the court jurisdiction and to fulfill due process of law requirements.

The act in subsections 17 and 18 provides for a trial by a jury, with right of appeal to this court, when land is damaged or taken from the owner as by condemnation, but this is in the second period of the litigation not yet reached in this action, and not in any way precluded by the judgment appealed from. Hence no question that may arise as to the sufficiency of the trial provided for upon that or any other question to be determined later in the proceeding is now before us.

So the question narrows to whether or not landowners within a proposed drainage district are entitled to a trial by jury upon a determination of whether or not the district shall be created. That the governing au-

thorities, after the district is created, may have the power to levy taxes, take property, &c., and may ultimately exercise that power against appellants, is clearly not involved upon a preliminary inquiry authorized by the legislature to determine whether the necessity exists for the formation of such a district. Nor, upon such an inquiry, does it matter whether the district, if created, will be a public, quasi-public or private corporation. The sole question involved is whether the legislature may authorize the formation of such a district without affording to property owners to be included a trial by jury of the necessity or propriety of the district being created. Before the adoption of our present state Constitution the legislature could have created it by legislative act, as was done in the creation of the district involved in the case of Hoertz v. Jefferson Southern Pond & Drainage Co., *supra*. The present Constitution does not take away from the legislature this power to create corporations but only prohibits their creation by the passage of local or special acts. Section 59, Constitution. The legislature must, therefore, perforce enact as it has done in this act and others, general laws for the formation of all corporations and must prescribe the terms and proceedings by which every kind of a corporation shall be formed; and in the case of drainage district corporations has enacted general laws conferring upon the courts of the state the power to determine upon a judicial investigation, whether in a given case the conditions exist which it declares shall authorize the formation of such a district.

As we have already seen, the act provides a due process of law opportunity to every landowner to be included or affected by the proposed district, whatever its precise character, as a corporation, to be heard upon the prescribed judicial determination of whether or not these conditions exist and whether or not his lands should be included. That a right to trial by jury of such a question is not within the constitutional guaranty seems to us clear, since that guaranty only preserves the right in such cases as it existed at the common law and does not attach where the proceeding is purely statutory and was unknown to the common law, as is the case here. Section 7, Kentucky Constitution; Stidger v. Rogers, Sneed 52; Enderman 20, Ashby, Sneed 53; Gullion v.

Bouleware, Sneed 76; Hughes v. Hughes, 4 Mon. 42; 24 Cyc. 101; 6 R. C. L. 458.

5. The last complaint is that the circuit court, in the judgment appealed from, retained jurisdiction instead of remanding the cause to the county court for further necessary proceedings. By the several subsections of section 1 of the 1918 act concurrent original jurisdiction is conferred upon the county courts and circuit courts to hear and determine all questions that may arise in such a proceeding; the circuit court is given appellate jurisdiction of all orders and judgments of the county court in proceedings begun in that court, and the Court of Appeals is given appellate jurisdiction of all final orders or judgments rendered in the circuit court.

The act further provides that "Trials upon appeals to the circuit court from orders and judgments of the county court shall be *de novo,* and the same shall be tried and judgment rendered and executed as though the proceeding had been originally commenced in the circuit court."

We think this provision clearly indicates that whenever at any stage of the proceeding it is carried from the county court to the circuit court the latter shall assume jurisdiction and complete the trial of the case "as though originally begun in that court," especially since there is no provision, or reason so far as we can see, for remanding the case to the county court to do what the circuit court has concurrent jurisdiction to do.

Wherefore the judgment is affirmed.