The Greenhills Home Owners Corp., Appellee, *v.* Village of
Greenhills et al., Appellants. (Two cases.)
The State, ex rel. The Greenhills Home Owners Corp.,
Appellee, v. Village of Greenhills et al., Appellants.

[Cite as Greenhills Home Owners Corp. v. Village of Greenhills,
5 Ohio St. 2d 207.]

(Nos. 39229, 39230 and 39231—Decided March 16, 1966.)

208

*Mr. Charles P. Taft, Mr. Thomas H. Mongan* and *Mr. Robert E. Dolle,* for appellee.

*Mr. C. R. Beirne* and *Mr. Robert G. Woellner,* city solicitor, for appellants.

*Messrs. Lindhorst & Dreidame* and *Mr. Robert F. Dreidame,* for intervenor-appellants.

Schneider, J. In the 1930's, the United States of America erected a model town, in the rural outskirts of Hamilton County, which it called "Greenhills." Surrounding a central commercial area, single-family and multi-family residences were constructed for rental to lower-income family units. Churches, schools and other public meeting houses were provided. The plan included public commons, parkways and playgrounds interspersed with curving streets and graceful walks. Circumscribing all was a corridor of varying width of grassland and woodland, as a rampart against the intrusion of further urbanization from within as well as from without.

The town was incorporated as an Ohio municipal corporation. After World War II, the government determined to sell the town as an entity to any person or group of persons which could reasonably be found capable of continuing to operate it in accordance with the original plan. Alarmed by this decision, a group of citizens and tenants associated themselves together as a corporate body, the Greenhills Home Owners Corporation (GHOC), for the purpose of qualifying as that purchaser. The purchase was finally accomplished but not without many long months of agonizing negotiations within the corporation and with the Federal Housing Administration as agent for the United States.

The circumferential strip of woodland, known as "Greenbelt," is the focal point of the controversy between GHOC, the plaintiff-appellee, and the village (now a city), a defendant-appellant. A large number of residents of the community whose interests parallel those of the municipal corporation itself joined the proceedings in the trial court as intervening defend-

ants and appear here separately as appellants. The three separate actions seek mandamus, declaratory judgments and injunctions, and were consolidated for trial. The objective of GHOC was the invalidation of the zoning ordinance of Greenhills to the extent that it thwarts GHOC in developing Greenbelt for residential use. The Court of Common Pleas found for the village, holding that the ordinance's restriction of Greenbelt to no other use except public park reservation, playgrounds, public recreational buildings, allotment gardens, farms, nurseries, gardens, public utilities, churches and bus passenger stations, constituted, under all the circumstances, as revealed by an exceedingly complex record, a valid restriction engrafted upon the title of GHOC to Greenbelt. In appeals on questions of law, the Court of Appeals found the zoning ordinance to be unconstitutional so far as it limits the use of Greenbelt as indicated and reversed the judgments of the Court of Common Pleas.

Our view of the matter will not require a lengthy excursion among the myriad facets of a basically simple case, vastly overcomplicated, to paraphrase the trial judge.

Although its conception and birth were the subject of meticulous study and planning by government experts, Greenhills, for the decade and one-half during which it remained under the ownership of the government, was, unlike the usual community, unneedful of, and in fact without, a zoning ordinance to protect its existing arrangements and to control its future development according to its original plan. As overlord, the United States regulated the use of every inch of land and of every blade of grass. However, prior to its purchase of Greenhills, GHOC determined to see to it that zoning was adopted.

After the professional planner who had previously designed Greenhills for the United States was engaged to draft a zoning ordinance incorporating his original concepts of the model community, including the Greenbelt, and after that draft was presented to the proper village authorities for consideration, GHOC delegated its vice-president and a member of its board of directors, Charles Stamm, as its permanent emissary to the planning commission and council of the village in the matter of the

adoption of that draft, notwithstanding that two other board members were also members of the planning commission and two other board members were village councilmen.

For over a year and a half prior to August 1949, the labors of the commission and the council extended throughout day and night, in informal meetings and formal hearings. On the second day of that month and year, without any objection whatsoever, so the written records indicate, a zoning ordinance identical to the original draft as to that part which is in controversy here was duly adopted by the council after favorable recommendation by the planning commission.

In addition to the Greenbelt district, the ordinance divided the entire village into four other districts, three involving residential uses and one for commercial purposes. It regulates the density of uses within the districts, the height of structures, lot usage, and so on. In short, it is a comprehensive zoning ordinance in that it provides for that variety of land uses deemed necessary to the preservation of that portion of the village plan already executed and to the orderly completion of that plan.

Always in attendance at each meeting considering the zoning ordinance, and always insistent that the ordinance be adopted, was GHOC's representative, Stamm, fortified by the official written position of GHOC's board of directors that the proposal ought to be adopted. From time to time, other officers and directors of GHOC appeared at those meetings to support the passage of the proposed ordinance.

After its adoption, the negotiations for the purchase of the town, which had been lopping along at a flaccid pace, swiftly reached the end of their course. But not before the United States was prevailed upon by GHOC to reduce the purchase price by $98,969, representing the appraised value of the 331 acres of Greenbelt at $299 an acre, because Greenbelt had been zoned as indicated and hence unavailable for the use now desired by GHOC.

The village and the intervenors contend that GHOC's promotion of the ordinance containing the Greenbelt restrictions was pursuant to the insistence of the United States that zoning appropriate to its original conception as a "Greenbelt"

town be adopted prior to any sale. Thus, it is claimed that GHOC was, if not the agent of the United States, the principal actor in an endeavor which was a *sine qua non* to GHOC's qualification as the purchaser. Alternatively, appellants claim that the promotion of the ordinance was designed to strike $100,000 from the purchase price. GHOC, of course, emphatically denies both contentions and pleads that its participation in securing the ordinance was simply for the purpose of advancing the general welfare of the community. In our view, the truth or falsity of these claims, to which a major portion of the six-week trial was devoted, is immaterial. Equally immaterial is whether the United States even knew of GHOC's participation in seeking the zoning ordinance, although the trial court found that it did.

The critical facts were never in dispute. GHOC did actively promote, as hereinbefore indicated, a comprehensive zoning ordinance over the course of a year and a half. During all this time GHOC was the potential purchaser of substantially every square foot of land subject to that ordinance. GHOC did, in fact, purchase that land. And GHOC thereby became the beneficiary of every good (neither the greatest nor the least of which was a reduction in the purchase price) and the endurer of every evil, if any, flowing from that ordinance.

There is, however, testimony from Stamm alone that in the course of the struggle to secure adoption of the ordinance and, despite the absence of any written objections, he registered the protest that the Greenbelt restriction should not be enacted. However, the fact, that GHOC's legal counsel had advised its board that in his opinion those restrictions were unconstitutional, was never communicated to any of the village authorities either by Stamm or by anyone else. Without weighing the evidence, Stamm's account of his objections, although vague as to dates, times or specific language, but construed most liberally in favor of GHOC, amounts to this paraphrase: "We (GHOC) want this zoning ordinance but we object to the Greenbelt provisions. However, if the village will not adopt the ordinance without Greenbelt, then we urge its adoption as drafted and we can adjust our differences at a later time."

At best, this objection was qualified, and, lacking the

disclosure that GHOC had convinced itself of the unconstitutionality of the objectionable feature, it was tantamount to inequitable conduct toward the village authorities and the citizens who expected the zoning ordinance, among other things, to preserve an important characteristic of the village.

The first rule controlling these cases is that a court will not exercise its power to determine the constitutionality of a legislative enactment unless it is absolutely necessary to do so. *State, ex rel. Lieux,* v. *Village of Westlake,* 154 Ohio St. 412. And, such necessity is absent where other issues are apparent in the record which will dispose of the case on its merits. *Crowell, Commr.,* v. *Benson,* 285 U. S. 22.

These precepts were ignored by the Court of Appeals in declaring the ordinance unconstitutional solely on the basis of *Morris County Land Improvement Co.* v. *Township of Parsippany-Troy Hills,* 40 N. J. 539, 193 A. 2d 232. The restriction declared invalid in that case was an amendment to an existing comprehensive zoning plan, which further limited a single area to water-life and flood control purposes without any participation in or consent to its enactment by the owner of the land affected. Furthermore, a comparison of that situation with the limitations of Greenbelt in this case, is as unrealistic as it is premature. Similar limitation is inherent in every ordinance or zoning regulation which requires ''open space'' on all building lots. Such required ''open space'' is perpetually ''used'' to preserve maximum density of the active uses of land to prevent overcrowding and to minimize health and safety hazards. In these cases, the ''open space'' is located in one area. Therefore, it is no more correct to hold that Greenbelt is not ''in use'' than to hold that ''open space,'' in the form of ''set-backs'' and minimum yard requirements, is not ''in use.''

The ordinance here may well violate the constitutional rights of GHOC quite apart from the reasoning of the Court of Appeals. Conversely, it may well be constitutional in spite of the rule of *Morris County Land Improvement Co.*

But the enduring value of the rule restraining precipitous constitutional determinations is well illustrated by these cases. The decision of the Common Pleas Court would tend to overemphasize zoning as an element of the law of real property. On

the other hand, the decision of the Court of Appeals might well cast premature doubt on the validity of so-called "development plans" now prevalent in zoning practice.

Therefore, the second rule of law which we adopt as applicable here and from whose strictures GHOC has clearly failed to remove itself is tautly drawn in *Board of Levy Commissioners* v. *Johnson*, 178 Ky. 287, 199 S. W. 8, to the effect that where there is clear evidence that a party seeking to assail a regulation as unconstitutional "aided in procuring the legislation and derived benefit therefrom and that to set it aside would work a hardship or injustice on others who were misled to their prejudice into believing that the legislation was valid," estoppel will deny any right to pursue the attack on validity.

The rule has been recognized in less stringent form by this court in *Mott* v. *Hubbard, Treas.*, 59 Ohio St. 199, and *City of Mount Vernon* v. *State, ex rel. Berry*, 71 Ohio St. 428. It has been applied in many other jurisdictions. See, for example, *Great Falls Mfg. Co.* v. *Attorney General*, 124 U. S. 581; *Wall* v. *Parrot Silver & Copper Co.*, 244 U. S. 407; *St. Louis Malleable Casting Co.* v. *George C. Prendergast Constr. Co.*, 260 U. S. 469; *Daniels* v. *Tearney*, 102 U. S. 415; *Vickery* v. *Board of Commrs. of Hendricks County*, 134 Ind. 554, 32 N. E. 880; *Foley* v. *State, ex rel. King, Atty. Genl.*, 157 Okla. 202, 11 P. 2d 928; *Hoertz* v. *Jefferson Southern Pond Draining Co.*, 119 Ky. 824, 84 S. W. 1141; *DeNoma* v. *Murphy*, 28 S. D. 372, 133 N. W. 703; *Owens* v. *Corporation Comm. of Okla.*, 41 F. 2d 799; and *Convent of Sisters of St. Joseph of Chestnut Hill* v. *City of Winston-Salem*, 243 N. C. 316, 90 S. E. 2d 879. See, also, 16 American Jurisprudence 2d 328 *et seq.*, Section 131 *et seq.*; 48 Harv. L. Rev. 988; 34 Col. L. Rev. 1498; and 34 N. C. L. Rev. 514.

As already shown, procuration and benefit are manifest in this record. Only injustice to the appellants can flow from a judgment in favor of the appellee who is, therefore, estopped from having it. Accordingly, the judgments of the Court of Appeals are reversed and final judgments are granted in favor of the appellants.

*Judgments reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur.