THE PEOPLE *ex rel.* Bollweg

*v.*

DRAINAGE COMMISSIONERS UNION DISTRICT NO. 1, etc.

*Filed at Ottawa November 9, 1896—Rehearing denied March 4, 1897.*

1. DRAINAGE—*commissioners cannot change district boundaries except by dissolution.* Farm drainage commissioners have no power, after organization, to change the boundaries of a district except as provided in section 47½ of the Farm Drainage act, (Laws of 1889, p. 119,) which authorizes a dissolution, nor can a district be dissolved otherwise than as there provided.

2. SAME—*a resolution of commissioners attempting to change district boundaries is invalid.* A resolution adopted by farm drainage commissioners, after organizing a district, which attempts to change its boundaries, is invalid and does not affect the validity of the district organization.

3. SAME—*an order of commissioners annulling former void resolution should stand of record.* An order of farm drainage commissioners annulling a void resolution of former commissioners which attempted to change the district's boundaries has the effect of undoing the void act, and should be allowed to stand of record as removing a cloud on the district organization.

*People ex rel.* v. *Drainage Comrs.* 61 Ill. App. 416, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of DuPage county; the Hon. C. W. UPTON, Judge, presiding.

The statement of this case and opinion of the Appellate Court for the Second District, by LACEY, J., (61 Ill. App. 416,) are as follows:

"This proceeding is instituted by a common law writ of *certiorari*, sued out of the circuit court of DuPage county by John Bollweg, as relator, for the purpose of having annulled and set aside certain proceedings of the drainage commissioners of Union District No. 1 of the towns of Milton and Winfield, in DuPage county, Illinois, which are claimed by him to be illegal and void.

"On November 8, 1886, a petition for the organization of Union District No. 1 of the towns of Milton and Winfield, in the county of DuPage and State of Illinois, setting forth the boundaries thereof, was filed in the office of the town clerk of the town of Milton. After the filing of the petition the town clerk, in compliance with the statute, gave notice to each of the commissioners, and they met November 10, 1886, and adjourned to November 19, 1886, at nine A. M., for the further completion of said union district. The clerk then posted notices, as required by law, that a meeting of the drainage commissioners would be held at the town clerk's office of the town of Milton at the hour of nine o'clock on the 19th day of November, 1886, (which was not less than eight nor more than fifteen days from the date of said notice,) for the purpose of organizing said drainage district. He also filed a copy of this notice in his office. Pursuant to this notice the commissioners met November 18, 1886, at nine o'clock A. M., for the further completion of the said union district, and thereupon proceeded to ascertain whether the petition contained the signatures of the requisite number of land owners. The necessary affidavit, to be signed by two credible signers of the petition, was duly signed and sworn to by Jesse C. Wheaton, Sr., and H. H. Hadley, and filed with the commissioners. At this meeting the record shows that the commissioners, after reciting the beginning and terminus of said drain, viz., the beginning to be 'at or near the Wheaton road' and the terminus 'to empty into the DuPage river,' after reciting the land over which it should pass, and after a full hearing upon the petition, found in favor of the said petition, and thereupon made a written statement of their finding, which was entered of record. The finding of the commissioners is in accordance with the statute. After the finding of the commissioners in favor of the petitioners the commissioners adjourned to November 27, 1886, (which was not less than eight nor more than fifteen days,) to

meet on the ground of the proposed ditch. On November 27, 1886, the commissioners went upon the lands of the proposed district and examined the same, and then and there duly adjourned to meet at the town clerk's office on December 10, 1886.

"On December 10, 1886, the map showing the district was approved, and the district was duly organized and work was commenced. A portion of the right of way was obtained, John Bollweg, the petitioner in this suit, having signed a release on December 15, 1886, and another release on November 9, 1893. A special assessment was made and collected, and everything ran along smoothly until March 25, 1887, when the drainage commissioners considered the question of changing the boundaries of said ditch, and commissioner Stacey offered a resolution to that effect, that the lower end or terminus shall be on the west line of the land of John Weisbrook, * * * which resolution was adopted. At a subsequent meeting, held April 2, 1887, the proposition of each party entering into an agreement to build his own ditch was discussed, and leave was given the land owners to petition the commissioners to abandon the ditch. A committee was appointed to carry out this proposition, and, awaiting the action of this committee, the commissioners adjourned to meet at the call of the chairman.

"As the record shows, this was all the action ever taken in reference to changing the boundaries or terminus of said ditch. It does not appear by the record that this committee ever reported nor that any further action in reference to this proposition was ever taken. The commissioners continued their control over said drainage district, making orders as late as August 20, 1890. In October, 1893, the old commissioners having gone out of office and new commissioners having been elected, it was decided by them to complete the ditch of this drainage district in accordance with the prayer of the original petition, and the order of December 10, 1886, organizing

the drainage district, a part of the work having already been done. The attempted action of the old commissioners in reference to changing the boundaries of said ditch was rescinded October 28, 1893, and an engineer was employed, a re-survey was made over the old route, the map completed, and the ditch ordered constructed and completed in accordance with the prayer of the original petition. James H. Hill, John Bollweg (the petitioner here) and Christian Fessler signed releases for the right of way, a special assessment was made, from which no appeal was ever taken by any one, a large portion of the work had been done and contracts for most all of the work had been let, (John Bollweg agreeing to contract for the work across his own land,) when this petition for a writ of *certiorari* was filed. Attorneys for appellant raised various questions for consideration and decision.

"LACEY, J.: It appears from an examination of the record in the case that the appellee drainage district was fully organized according to law, including that portion of territory, extending to the DuPage river, attempted by subsequent order of the commissioners to be dropped from the district.

"The portion of the record sought to be quashed by this proceeding was an order of the board of drainage commissioners entered of record and passed at a regular meeting of the board, October 28, 1893, annulling and rescinding a former order of the commissioners March 25, 1887, whereby the boundaries of the district were attempted to be changed from the original organization, so that the boundary of the lower end of the district would terminate on the west line of the land of John Weisbrook, and the ditch would also terminate there.

"The questions have been ably presented by the attorneys on both sides and many points raised, but in the view we take of the matter it will not be necessary to notice all the questions presented.

"It appears to us, from an examination of the record, that the district was legally and finally organized in December, 1886, and in that organization the portion excluded by the order referred to, of March 25, 1887, was included. We are of the opinion that the commissioners had no power, after the original organization, to limit the district or change the boundaries except under the provisions of the Farm Drainage act, as provided in section 47½, (R. S. Starr & Curtis,) which authorizes a dissolution; and the district, in whole or in part, cannot be dissolved otherwise, and a district, possibly, cannot be partially dissolved under that section,—a question we need not decide. There is no provision of the statute authorizing a change of the district after it is fully organized. But if such an order changing the district is invalid, no reason is perceived why such an order may not be revoked by the drainage commissioners.

"The order of restriction was void, and the subsequent order annulling it could only have the effect to undo the void act. Such order should therefore stand of record for the purpose of removing a cloud on the district organization. The judgment of the court below quashing the writ of *certiorari* is therefore affirmed."

CHARLES WHEATON, and T. M. MANNING, (HARVEY B. HURD, of counsel,) for appellant.

E. H. GARY, J. F. SNYDER, and GEORGE W. BROWN, for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

A careful examination of this record convinces us that the material question presented is as to the act of the commissioners in rescinding the resolution of the commissioners of March 25, 1887, which was rescinded by the resolution of October 28, 1893. The resolution of March 25, 1887, was invalid and unauthorized, and did not effect

a change of the boundaries of the district as originally organized. The original organization was in pursuance of the statute, and created a legal district. No change in the boundaries of the district being effected by the resolution of March 25, 1887, they were the same as they were prior to that resolution. The resolution of October 28, 1893, did not operate to extend the boundaries of the district, which still remained as they were before the resolution of 1887. The only effect of the resolution of 1893 was to correct the records of the district. Neither resolution changed the boundaries of the district. The statement of the case as made by the Appellate Court states it as shown by this record.

We concur in the opinion of Mr. Justice LACEY, and the judgment of the Appellate Court for the Second District is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part in the decision of this case.