## Holt, Drainage Com'r, v. Madison Coal Corporation.

(Decided June 23, 1933.)

E. R. MORTON for appellant.
W. T. HARRIS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In 1913, there was duly established in Union county a drainage district known as the Dennis O'Nan drainage district. The appellee, Madison Coal Corporation, owned a large tract of land adjacent to this drainage district. In the operation of its mine, the coal company discharged the water pumped from it into a ditch which drained it into the ditch of the drainage district.

The drainage board objecting to the coal company thus. discharging its water, an agreement was entered into in November, 1923, by the drainage commissioner and the coal company, whereby the drainage district was enlarged so as to embrace the lands of the coal company, and the coal company was permitted to discharge its water as it had theretofore been doing. The coal company paid to the drainage district the sum of $1,500,. and the drainage district made certain alterations in the ditch into which the coal company discharged its water and which emptied into the public ditch of the drainage district so as to accommodate the water from the mine. The agreement between the drainage district and the coal company further provided that in the maintenance of the drainage ditches, the coal company should pay on the assessments thereafter made for the purpose its pro rata share of such cost to be determined in the same proportion as $1,500 it had paid bore to the total cost of the original construction of the drainage ditch.. This agreement between the coal company and the drainage district was embodied in proper orders of the county court, extending the drainage district so as to include the lands of the coal company. Thereafter, the coal company continued to discharge its water into the drainage system of this drainage district and to pay its part of the assessments made for the maintenance of this district.

About 1926 or 1927, the coal company ceased to operate its mine and in fact abandoned it, although continuing to hold title to the lands under which the mine lay. It continued to pay its part of the assessments for the maintenance of this drainage district until 1931, when this suit was brought by it in the county court to enjoin the drainage commissioner from thereafter levying any assessment against it for the maintenance and upkeep of the ditches of this drainage district. The coal company in its petition asserted that all of its land was hill land and had no need for the ditches of the drainage district to drain it and that the sole purpose of the incorporation of this land into the drainage district was in order that the water pumped from the mine might be discharged into the ditches of this district and that as the mine had been abandoned and no water was being pumped therefrom, the coal company had no further need of the ditches of the drainage district and

that to compel it to pay the assessment for the maintenance and upkeep of the ditch would be a great hardship upon it and harm to it. The county court sustained a demurrer to this petition, and on the coal company declining to plead further, dismissed it, and thereupon an appeal was taken to the circuit court. There the demurrer to the petition was overruled and then the drainage district filed its answer, which added but little to the issues raised by the petition except to set out more fully the facts hereinbefore detailed. The court sustained a demurrer to the answer and the defendant declined to plead further. Judgment was entered in accordance with the prayer of the petition, enjoining the drainage commissioner and the district from thereafter making any assessment of any kind against the property of the coal company for upkeep or maintenance, or for any purpose whatsoever in connection with the said drainage district. From that judgment, this appeal is prosecuted by the drainage district.

The question presented by this appeal is a new one. We have been cited by counsel to no controlling precedent, nor have we by an independent search found one, nor even a case of persuasive authority. This district was established under the 1912 Drainage Law, now embodied in section 2380-1 et seq. of the Kentucky Statutes. A reading of the provisions of this law leads to the conclusion that in the establishment of a drainage district the landowner whose lands are proposed to be included must at the proper stage in the proceedings had to organize the district present whatever objections he has to the inclusion of his property in the proposed drainage district. When the judgment organizing the district is finally entered, the status of any particular land included as the part of the drainage district is fixed; the judgment necessarily concluding the questions of the necessity of the land being included, the benefits that will accrue to the land because of its inclusion, and the damages accruing to the land because of such inclusion. This judgment further necessarily concludes the question of liability for assessments for the future maintenance and upkeep of the district except in so far as the landowner may from time to time except to the assessments for maintenance and upkeep as provided in section 2380-39 of the Statutes. We can find no authority in the act for any land to be withdrawn from

the drainage district once it has been included. The benefits and damages to the land and the fact it will be liable in the future for assessments for maintenance and upkeep must be presumed to have been weighed and concluded in the judgment, organizing or extending the district and including the land therein. It is true that by section 2380-49a of the Statutes, a, public ditch of a district may be discontinued in the manner therein pointed out, but it is not contended that the instant case presents any such effort to discontinue a public ditch. These views are supported by the logic of the opinion of this court in the case of Hatchell v. Board of Drainage Commissioners of Hickman County et al., 191 Ky. 246, 229 S. W. 1036, 1037, wherein it was sought to discontinue a drainage district under the provisions of section 2380-49a of the Kentucky Statutes, supra, before it had been finally organized. It refusing to grant such relief, this court said:

"It will not be disputed that a drainage district is a governmental agency for the exercise of a legislative power and its establishment can be effected only by a delegation of authority for that purpose by the Legislature, and likewise such a district can be annulled and discontinued by legislative authority only. It furthermore must be conceded that, when the Legislature has delegated authority to discontinue or dissolve a drainage district, the delegated authority must be exercised substantially as provided, both as to time and manner, in order to effect a dissolution or discontinuance of a district. People v. Union District No. 1, etc., 165 Ill. 156, 46 N. E. 261. The Legislature has delegated no other authority which authorizes the discontinuance of any part of a drainage district which has been established except such as is conferred by subsection 49a of section 2380, supra. * * * The district sought to be dissolved and discontinued in this action was established as provided by section 2380b, supra, and it will be observed that it is specifically provided by subsection 18 of that act that, when the report of the board of appraisers is under consideration, the landowners may secure the abandonment of the project to organize a district, by showing that the costs of the improvements contemplated will exceed the benefits accruing to the lands

and property in the district, and in the event of an adverse decision and a confirmation of the report and the establishment of the district they may appeal from the judgment.''

While the court in this Hatchell Case had before it a district organized under the 1918 Act (c. 64; Ky. Stats. sec. 2380b-1 et seq.), yet we find in the 1912 Act (c. 132) equal, if not more, liberal provisions for the landowner at the time it is proposed to organize the district to present his objections to the inclusion of his land in the district. Hence the reasoning of the Hatchell Case is quite apposite to the question before us. Therefore, as there is no legislative authority for land to be withdrawn from a drainage district once it has been included therein, and as the judgments creating and extending the district conclude the question of the benefits to land included in the district and/or the damages to it because of such inclusion, and its liability for assessments for future maintenance and upkeep it follows that inasmuch as the land of the appellee was as legally included in the district by the supplemental order of the county court extending the district as if it had originally been made part of the district (see Ky. Stats. sec. 2380-23), it cannot now be withdrawn as here attempted. The lower court erred in overruling the demurrer to the petition of the coal company and sustaining it to the answer of the drainage district.

Its judgment is reversed for proceedings consistent with this opinion.