### Henshaw v. Holt.

(Decided Nov. 19, 1935.)

G. L. DRURY for appellant.

E. R. MORTON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

G. W. Holt, drainage commissioner for Union county, Ky., brought this suit against Marsh Henshaw, seeking to enforce the collection of maintenance taxes alleged to be due certain drainage districts in Union county, and sought a lien against Henshaw's lands alleged to be benefited by the drainage system, as provided in section 2380 and subsections thereof, of Kentucky Statutes, known as the Drainage Act of 1912 (section 2380-1 et seq., as amended).

In 1909 a proceeding was instituted in the Union county court pursuant to a petition filed by appellant and others for the establishment of a drainage district and the case was continued on the docket from time to time until after enactment of the Drainage Act of 1912

(Acts 1912, c. 132), and the drainage system was finally established and constructed under the provisions of that act.

The court sustained a demurrer to the plaintiff's petition because of insufficient description of the land sought to be impressed with the assessment lien, and in order to obtain a proper description of the land, the court appointed G. W. McEllory, an engineer, to establish the location and boundaries of the lands affected, and, in addition thereto, the county court redocketed the original suit and appointed the same engineer, together with commissioners or viewers to go upon the lands and make a survey for the purpose of obtaining a description of the lands benefited by the construction of the drainage system, which they did, and made their report to the court. Thereupon the plaintiff filed his amended petition in which he set out and described the lands alleged to be benefited.

Appellant filed exceptions to the report of the engineer and viewers on the ground that the court had no authority or right to direct a survey made and, further, that the county court had no right to redocket the case and appoint commissioners to act with the surveyor in obtaining a description of the lands benefited by the drainage system. But we think the circuit court had the right to direct a survey of the lands for the purpose of obtaining a description thereof, and it is immaterial whether or not the county court had the right to redocket the case or otherwise act officially therein. The purpose of the proceeding under the orders of the circuit court was to obtain a description of the lands benefited by the drainage system. There is no complaint that the description as found and reported by the engineer is incorrect, with respect to the location of the lands and the ditch. It is only insisted that the engineer and those assisting him could not now ascertain the lands benefited by the construction of the drainage system more than twenty years ago. The property map made by the engineer at the time of the original proceeding had in the county court to construct the drainage system, a copy of which is filed with this record, shows the outline of the district including certain portions of appellant's lands, which map was considered by the chancellor in the trial of the case. We do not think the proceeding had in the circuit court to obtain a description of the property was prejudicial.

The court overruled the exceptions and thereupon appellant filed his answer in which he alleged that the lands against which the maintenance tax is sought to be enforced "is high and dry, not subject to overflow, needs no drainage, is not now benefited, and cannot be benefited by the levy of any tax or assessment, and that any levy of any tax or assessment against his property is violating his rights as a citizen as guaranteed under the Constitution of the United States and the State of Kentucky, by taking private property for public purposes without just compensation." He further pleaded that since the construction of the ditch, with its great fall, it has washed deeply and through his land and no work or repair is necessary along the ditch adjoining his land and no good or benefit can inure to him by reason of any work that could or should be done upon the ditch.

Briefly stated, the only defense offered to the merits of the case is that since the construction of the ditch which has embedded itself in a way and manner as to render any repairs or maintenance unnecessary in so far as it affects his land, and because of such change of conditions, he should now be relieved of any further maintenance tax. The court sustained a demurrer to the answer, and appellant, plaintiff below, failing to plead further, judgment was entered for the sum of $600 with a lien against the respective tracts of land benefited, and to reverse that judgment this appeal is brought.

Subsection 39 of section 2380 of the Statutes (Supp. 1933, sec. 2380-39), in part reads:

"For the purpose of providing funds to pay the compensation herein provided to the drainage commissioner, his agents, servants and employees, outside of that portion of same which shall be provided for and paid out of the original assessment on any drainage district, as well as to pay the cost and expense of repairing, keeping open and looking after the various public drains, ditches and like improvements under the charge of said commissioner, the lands in each drainage district, which may be established under this act, as well as the lands assessed for each public ditch or system of drainage established under pre-existing laws, shall be and the same are hereby authorized to be assess-

ed, in proportion to the original assessment made against them for the original establishment and construction of such system of drainage.''

It will thus be seen that the statute does not provide for a reapportionment of taxes against lands benefited with respect to the maintenance tax. All lands benefited are a part of the drainage district and a part of one system, and it will be presumed that all lands embraced in the system are benefited by the maintenance of the system as well as its original construction, although a condition may arise making it unnecessary to repair the system adjoining each particular parcel of land abutting the ditch. Appellant cites and relies upon the case of Parke County Coal Co. v. Campbell, Surveyor of Parke County, 140 Ind. 28, 39 N. E. 149, 558. The opinion in that case is predicated upon a particular provision of the Indiana statute, which reads:

"To raise the necessary money to reimburse the treasury, he (the county surveyor) shall apportion and assess the cost of such repairs upon the lands adjudged by the court benefited by the construction of the ditch, in like proportion as benefits were assessed against said lands for the construction of said ditch.''

The Indiana court construed the statute quoted above to mean that no maintenance tax could be assessed against land not so benefited, although such land was originally assessed for the construction of the ditch. It may be noted, however, that there is a dissenting opinion in the Indiana case, supra. The writer of the dissenting opinion said:

"The legislature, I think, in the enactment of the law, has clearly expressed its intent that after assessments have once been made, and confirmed for the construction of a ditch, then, in assessing expenses thereafter for the repair of the same ditch, the surveyor shall have no discreation but to make the assessments in the same proportions as those originally made.''

We do not think the dissenting opinion is without reason or logic.

Conceding that the majority opinion in the Indiana case, supra, is the correct interpretation of the statute

of that state, we are not prepared to apply the same construction to our statute, which, of course, is somewhat similar to the Indiana statute.

To illustrate: A ditch adjoining A's land may not need repair, but the ditch adjoining B's land which is below or lower than A's land may become obstructed and by reason thereof the flow of the water would be impeded and result in a backwater overflow of A's land. Thus it will be seen that the repair of the ditch adjoining B's land would become necessary to protect A's land, and we think it would be fair and within the spirit and intention of the statute that A should pay his proportionate part of the cost of maintenance of the ditch.

It is also insisted that the Drainage Act of 1912, supra, is unconstitutional in so far as it may purport to authorize the assessment of lands for a maintenance tax unless it is necessary to repair the ditch or system adjoining that particular tract of land sought to be assessed. The constitutionality of the statute has been upheld by this court in the cases of Williams et al. v. Wedding, 165 Ky. 361, 176 S. W. 1176, and Hoertz v. Jefferson Southern Pond Draining Co., 119 Ky. 824, 84 S. W. 1141, 1143, 27 Ky. Law Rep. 278. In the latter case it is said:

"But if we were less certain of the constitutionality of the act under review, the case must be affirmed against appellant on this point for the reason that he or his grantors procured the legislation in question, and were the recipients of its benefits."

The same reasoning applies to the present case. The appellant was a party to the original proceeding for the establishment of the ditch and it is not denied that he was the recipient of its benefits. Also, in the the case of Holt v. Madison Coal Corporation, 250 Ky. 76, 61 S. W. (2d) 1064, the coal company had by petition become a taxpayer in the district in order to obtain an outlet for its mine water pumped into the public ditch. A few years later the mine ceased operation and the circuit court enjoined the collection of maintenance taxes assessed against the coal company. On appeal to this court the judgment of the circuit court was reversed on the ground that, once a taxpayer, always a taxpayer, and the company could not be relieved merely because it had no further use of the public ditch.

The facts disclosed in this record, viewed in the light of the statute and other authorities cited, impel us to the conclusion that the judgment of the chancellor is correct.

The judgment is affirmed.