OPINION.
{¶ 1} The appellant, Cindy Crest, appeals the January 21, 2003 judgment of the Common Pleas Court, Juvenile Division, of Allen County, Ohio, granting permanent custody of the appellant's son, Michael Bounds, to the Allen County Children Services Board ("ACCSB") and terminating her parental rights to Michael.
 {¶ 2} The relevant facts of this case are as follows. In early 2000, Cindy Crest lived in Oklahoma with her two children, Michael and Carlisha Bounds. Sometime in March of that same year, Crest was arrested by authorities in Oklahoma based upon allegations that she sexually abused Michael and Carlisha. At that time, Cindy placed the children under the care of their maternal grandparents. However, Michael's behavioral issues caused the grandparents to request that Michael be removed from their home. Cindy contacted Michael's father, Ronald Bounds, who lived in Ohio, and asked him to take Michael to live with him. Ronald agreed to take custody of his son, and Cindy signed a document releasing custody of Michael to Ronald. In addition, the charge of sexual abuse of Michael was dismissed, and Cindy pled no contest to the remaining count of sexual abuse against her daughter.
 {¶ 3} Michael moved to Ohio with his father and lived in his father's home along with his stepmother and half siblings. By June of 2000, Michael's behavioral problems escalated to the point where he was threatening his stepmother and his siblings with violence. As a result, he was admitted to St. Rita's partial hospitalization program. Unable to handle his son, Ronald then sought assistance from the Allen County Children's Services Board ("ACCSB"). On June 13, 2000, the agency filed a complaint in the Allen County Common Pleas Court, Juvenile Division, alleging that Michael was dependent, and he was placed in shelter care with the agency. Following a dispositional hearing before the magistrate on September 7, 2000, and the magistrate's subsequent decision two weeks later, ACCSB was given temporary custody of Michael and the trial court adopted a case plan for the child on October 18, 2000.
 {¶ 4} In the interim, on June 21, 2000, the court in Oklahoma deferred the imposition of judgment and sentence regarding the abuse of Carlisha for two years and placed Cindy on probation during this period. Cindy also moved to Missouri during this time. Because of this out-of-state residence, the magistrate determined that placement of Michael in Cindy's home was questionable because of ACCSB's inability to provide necessary services to both Michael and Cindy in another state. However, the adopted case plan required Cindy to obtain counseling, attend parenting classes, contact ACCSB to arrange visitation with Michael, and sign all necessary releases of information. In addition, Cindy was ordered to resolve the allegations of sexual abuse against her daughter or participate in and complete sex offender treatment. Ronald and his wife, Deb, were also ordered to participate in counseling, attend parenting classes, and to visit with Michael.
 {¶ 5} The case plan also required that a home study be conducted of Cindy's residence in order to determine whether her home was an appropriate place for a child. However, in order to have the home study performed in Missouri by the appropriate children services agency in Cindy's county, ACCSB had to prepare the necessary information pursuant to the Interstate Compact. This information was completed on February 28, 2001, and Missouri received it on March 5, 2001. The home study was completed on July 12, 2001, by authorities in the State of Missouri and sent to ACCSB by the Ohio Department of Job and Family Services in Columbus, Ohio, on September 17, 2001.
 {¶ 6} On November 29, 2001, ACCSB filed a motion for permanent custody of Michael. Although Cindy opposed the motion for permanent custody, Ronald consented to it. A hearing on this motion was conducted on May 28, 2002. However, only a portion of the evidence was presented due to time constraints, and the hearing was continued until July 31, 2002. The court then took the matter under advisement. On January 21, 2003, the trial court granted ACCSB's motion for permanent custody and terminated all parental rights and responsibilities of Cindy and Ronald to Michael. This appeal followed, and Cindy now asserts three assignments of error.
The trial court erred in finding that this child needs a legally securepermanent placement, which placement can be achieved only through a grantof permanent custody to the Allen County Children Services Board.
 The trial court erred in finding that appellee proved by clear andconvincing evidence pursuant to Ohio Revised Code Section 2151.414 thatappellant's parental rights be terminated.
 Ohio Revised Code Section 2151.414 is unconstitutional.
 First Assignment of Error {¶ 7} In her first assignment of error, Cindy asserts that the trial court erred in granting permanent custody to ACCSB rather than ordering that Michael be placed in a planned permanent living arrangement. Revised Code section 2151.353(A)(5) permits a court to place a child in a planned permanent living arrangement ("PPLA") if the children services agency makes such a request. A PPLA "is an alternative form of custody in which the child is placed in a foster home or institution, with the intention that the child will remain in that home or institution until he is no longer in the county child services system." In re D.B., 8th Dist. No. 81421, 2003-Ohio-3521, at ¶ 6, 2003 WL 21511310. With a PPLA, the parental bonds are not severed, such as occurs with a grant of permanent custody, but the child is also not provided with a legally permanent placement. Id.
 {¶ 8} The statute permits the use of a PPLA only in cases that qualify in one of three criteria: first, the child must have serious needs which preclude him from a placement outside residential or institutional care; second, the parents must have serious problems that prevent them from caring for their child, yet have a strong bond with the child, and adoption is not in the best interest of the child; or third, the child must be at least sixteen years old and unwilling or unable to adapt to a permanent placement. R.C. 2151.353(A)(5)(a-c).
 {¶ 9} In reviewing a trial court's determination of a disposition, an appellate court is to accord the trial court's discretion "the utmost respect." Reynolds v. Goll (1996), 75 Ohio St.3d 121. A reviewing court must take into account that "the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id. Pursuant thereto, the trial court enjoys the presumption that its findings were correct. Id. "A court exercising Juvenile Court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment." In re PieperChildren (1993), 85 Ohio App.3d 318, 330. It is with this standard in mind that we now review the case sub judice.
 {¶ 10} None of the parties to this action disputes that Michael suffers from behavioral problems. However, in her brief to this Court, Cindy maintains that Michael is unable to function in a family-like setting. Notably, this assertion was never made to the trial court. Nevertheless, the evidence presented during the permanent custody hearing revealed quite the opposite of Cindy's current contention.
 {¶ 11} The undisputed evidence showed that Michael remained in the same foster home throughout the two-year duration of these proceedings, with the exception of a short span of time where he was placed with another family. His foster father, Terry Williams, testified that not only did Michael live with him and his wife but also with Terry's three biological children and another foster child. In addition, Michael's grades and attitude improved during this two-year stay in this family-like setting, and Terry testified that Michael was seldom problematic while in his care. Thus, the evidence showed that Michael was able to function in a family-like setting and did not require residential or institutional care. Further, the evidence did not demonstrate that either of the other two criteria was applicable in the present case. Therefore, the trial court did not err in failing to order a PPLA, and the first assignment of error is overruled.
 Second Assignment of Error {¶ 12} Cindy also maintains that the trial court erred in determining that a grant of permanent custody to ACCSB was in the best interest of Michael by clear and convincing evidence. Our review of this issue begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes
(1997), 79 Ohio St.3d 46, 48, citing In re Murray (1990),52 Ohio St.3d 155, 157. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. In re Hayes, supra (citations omitted); In re Murray, supra. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right[.]'" In re Murray,supra. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." In re Hayes, supra (citation omitted). Thus, it is within these constructs that we now examine the second assignment of error.
 {¶ 13} The Revised Code requires that the trial court determine, by clear and convincing evidence, that a grant of permanent custody to the agency that has so moved is in the best interest of the child and
that one of four enumerated factors applies. R.C. 2151.414(B)(1). Included in this list is that "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period[.]" R.C. 2151.414(B)(1)(d).
 {¶ 14} The Supreme Court of Ohio has held that "[c]lear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate; being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477, citing Merrick v. Ditzler (1915), 91 Ohio St. 256. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross, supra (citations omitted). Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.
 {¶ 15} Here, the record reflects that Michael was placed in the custody of ACCSB on June 12, 2000. He remained in the custody of ACCSB through November 29, 2001, when it filed its motion for permanent custody, and remained in the custody of ACCSB until the hearing on May 28, 2002, and July 31, 2002. These facts were not disputed during the permanent custody hearing nor are they disputed on appeal to this Court. Thus, at the time that ACCSB filed for permanent custody, Michael had been in temporary custody for seventeen months. However, the trial court was then required by statute to subtract a period of sixty days from this time in making its determination as to whether Michael was in the continuous custody of ACCSB for a twelve-month period. See R.C.2151.414(B)(1). The trial court properly followed this statutory section and found by clear and convincing evidence that the child had been in the temporary custody of ACCSB for twelve or more months of a consecutive twenty-two month period in accordance with R.C. 2151.414(B)(1)(d). Our examination of the record reveals that the trial court had sufficient evidence before it to make this finding by clear and convincing evidence.
 {¶ 16} However, our evaluation does not end there. Rather, the trial court must also make the determination as to whether permanent custody is in the best interest of the child by considering all relevant factors, including, but not limited to the five factors listed in R.C.2151.414(D):
(1) The interaction and interrelationship of the child with the child'sparents, siblings, * * * foster care-givers, * * * and any other personwho may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child orthrough the child's guardian ad litem, with due regard for the maturityof the child;
 (3) The custodial history of the child, including whether the child hasbeen in the temporary custody of one or more public children servicesagencies or private child placing agencies for twelve or more months of aconsecutive twenty-two month period * * *
 (4) The child's need for a legally secure permanent placement andwhether that type of placement can be achieved without a grant ofpermanent custody to the agency;
 (5) Whether any of the factors in division (E)(7) to (11) of thissection apply in relation to the parents and child.
Among the factors in division (E)(7) to (11), is that "[t]he parent hasabandoned the child." R.C. 2151.414(E)(10).
 {¶ 17} In the case sub judice, the trial court determined that ACCSB made reasonable and good faith efforts to eliminate the continued removal of Michael from his home and to make it possible for him to return safely home. The court also concluded that Michael has serious behavioral problems, including violent and threatening behavior, which caused the father to refuse to assume custody of his child and consent to a grant of permanent custody to ACCSB. The trial court further found that Cindy was a recovering alcoholic, pled no contest to an allegation of sexual abuse against her daughter, Carlisha, did not complete sex offender counseling prior to the filing of the permanent custody motion although required to do so by the case plan, failed to complete individual counseling as required by the case plan, and had minimal contact with Michael that amounted to abandonment of him. The court also noted that the State of Missouri declined to recommend that Michael be placed with Cindy because of the plea of no contest to the sexual charges involving Carlisha and her failure to attend sex offender treatment as directed by the case plan. In addition, the court found that Michael had been in the custody of ACCSB for over twelve months, that he advised the caseworker that he does not want to live with Cindy, that his need for a legally secure permanent placement could not be achieved without a grant of permanent custody to ACCSB, and that the guardian ad litem recommended such a grant.
 {¶ 18} The evidence before the court revealed the following information. The parties stipulated that Michael informed the court during his camera interview that the alleged sexual molestation of him by Cindy did not occur. In addition, although Cindy initially pled no contest to the allegations involving Carlisha, the charges against her involving Michael were dismissed. Furthermore, on June 21, 2000, the judgment and sentence of the Oklahoma court as to the remaining count involving Carlisha was suspended pending a two-year probationary period. At the conclusion of this period, the remaining count was dismissed. Thus, Cindy was never convicted of either of these counts, and her record as to these charges was expunged on April 3, 2002.
 {¶ 19} As early as September 7, 2000, the court was aware that these charges were suspended pending Cindy's successful completion of a two-year probationary period. This information was acknowledged in the court's findings of fact and conclusions of law, submitted by the magistrate on September 22, 2000, and subsequently adopted by the trial court. Thus, based upon this knowledge, Cindy was ordered to either
resolve the allegations of sexual abuse or participate in child abuse offender counseling. However, on August 31, 2001, Cindy was ordered to obtain sex offender counseling, as well as individual counseling for other issues. Thus, Cindy began attending sex offender counseling in October of 2001. In addition, the allegations of sexual abuse were later resolved in April, 2002. Despite this unrefuted evidence, the trial court determined that Cindy failed to complete sexual offender counseling prior to the filing of the motion for permanent custody and relied, in part, on this finding in determining that permanent custody to ACCSB was in Michael's best interest.
 {¶ 20} The parties also stipulated that Michael informed the trial court during the in camera inspection that he wanted to live with Cindy. At the hearing, Stacy Steiner, the ACCSB case worker assigned to Michael, testified that on May 24, 2002, Michael would not commit to either placement. Specifically, she testified that Michael expressed a desire to live with his mother but also wanted to "still be with the Williams [his foster parents] and see his father." However, she further testified that Michael told her three months earlier that he wanted to stay with the Williams family and not live with his mother. Thus, the court found that Michael did not want to live with Cindy, and relied upon this information in considering the desires of the child pursuant to R.C. 2151.414(D)(2) in determining Michael's best interest.
 {¶ 21} The evidence before the trial court further revealed that Cindy began individual counseling with Linda Thomason, a licensed professional counselor and clinical social worker, as well as a certified substance abuse counselor and addictions counselor in Missouri, in September of 2001. The letter from Thomason stated that she counseled Cindy on a weekly basis until April of 2002, when their sessions became bi-weekly and that those sessions were on-going as of the date of the hearing. Cindy also testified to and presented documentation of her regular attendance at AA meetings. This testimony was further corroborated by the testimony of her live-in boyfriend, Michael Lane, and a letter written by her AA sponsor, Sherian Grayson, who both stated that Cindy regularly attends such meetings. Cindy also testified that she had not consumed alcohol or methamphetamines since March of 2000. This evidence was not disputed by ACCSB or Ronald Bounds during the hearing. Nevertheless, the trial court concluded that she had not completed individual counseling as ordered by the case plan and relied, in part, on this finding to determine that permanent custody to ACCSB was in Michael's best interest.
 {¶ 22} The court also relied upon its finding that the State of Missouri declined to recommend placement with Cindy because of the allegations of sexual abuse and her failure to attend sexual offender counseling as required by the case plan. However, the evidence revealed that this recommendation was made in July of 2001. By the time of the permanent custody hearing, the allegations of sexual abuse were resolved and Cindy had been attending sexual offender counseling for seven to nine months. Thus, the recommendation of the State of Missouri was out-dated at the time of the hearing.
 {¶ 23} The undisputed evidence before the trial court also showed that Cindy only visited with Michael four or five times during his two years in the custody of ACCSB. However, Cindy also contacted Michael via e-mail and the telephone, but this contact was somewhat limited by problems with Michael's e-mail account and also because he and the foster family were not always home when Cindy called. She and Lane also testified that they lived 500 miles from Ada, Ohio, where Michael lived with his foster family, and that each trip cost them approximately $300. Furthermore, their trips were limited by unreliable transportation and the fact that they had to take time off of work, which was costly given Cindy's low income.
 {¶ 24} The trial court was also presented with evidence that Cindy was present at all court proceedings with the exception of the two initial hearings and that she allotted extra time during these trips to visit with her son. In addition, Cindy requested that custody of Michael be transferred to the appropriate children services agency in Missouri to facilitate his reunification with her, given the father's repeated refusal to accept Michael back into his home. However, for reasons not provided in the record, this request was denied. We find this curious considering one of the main goals of a case plan is reunification with the parents, R.C. 2151.412(F)(1)(b), and the other is to place the child in a location in close proximity to the home in which he will be permanently placed, R.C. 2151.412(F)(1)(a). Nevertheless, the court concluded that her minimal contact with Michael amounted to abandonment. We find this specific conclusion to be rather perplexing in light of the fact that the court noted earlier in its decision that Michael was not
abandoned.
 {¶ 25} In light of the foregoing evidence, we fail to see how the trial court reached its conclusion that permanent custody to ACCSB was in Michael's best interest. During the hearing and in various findings and conclusions made by the trial court, much seemed to be made regarding the issue of the timing of Cindy's compliance or lack thereof with the conditions of the case plan. Other than attendance at AA and a visit with Michael, Cindy did not begin to comply with the other conditions of the case plan until August or September of 2001, only a few short months prior to ACCSB's motion for permanent custody. However, the evidence revealed that Cindy's income was low throughout these proceedings, a problem for many parents involved with a children services agency, and that the State of Missouri would not provide payment assistance for individualized counseling and sex offender treatment until it received information regarding the case plan's requirements through the Interstate Compact.
 {¶ 26} Although Cindy was ordered to go to counseling and sex offender treatment in September, 2000, and a home study was also ordered at that time, the necessary paperwork for the Interstate Compact was not completed by ACCSB until February 14, 2001. In addition, Ohio's Compact Administrator did not sign the Compact request and transmit it to Missouri until February 28, 2001. Thus, knowledgeable of the fact that a home study of Cindy's residence could not occur until the State of Missouri received the proper information, the agency did not complete the request until six months later. Furthermore, authorities in Missouri received the information on March 5, 2001, but the home study was not completed until July 12, 2001, some ten months after it was ordered by the magistrate. The results of the Missouri study were then sent back to the Ohio Compact Administrator, who then sent the information to ACCSB on September 17, 2001. Therefore, Cindy did not receive financial assistance for her court-ordered counseling until nearly a year after she was first ordered into counseling.
 {¶ 27} Once this information was completely transferred to ACCSB and a hearing was held before the magistrate on ACCSB's motion to extend temporary custody, Cindy began sex offender counseling with Buz Ferrell, a licensed professional counselor in Missouri, and individual counseling with Linda Thomason, as previously mentioned. Thus, the record reflects that almost immediately after receiving assistance from the State of Missouri, Cindy began counseling and continues to do so at the direction of Thomason. In addition, both her AA sponsor and her counselors provided letters stating that Cindy is open, prepared, and attentive during her sessions.
 {¶ 28} In summation, the evidence before the trial court demonstrated that Cindy's limited amount of visitation with Michael was largely based upon the distance between the two and the high cost associated with each visit, yet she attended most of the hearings in this matter and visited with her son for lengthy periods of time when she traveled to Ohio. Cindy had also remained in regular phone and e-mail contact with her son in the year prior to the hearing.
 {¶ 29} Cindy maintained her sobriety for two years, was working steadily with the same employer close to her home, and lived with Michael Lane for a year and a half in his four-bedroom home, which all parties agreed was well within the guidelines of being an appropriate home for a child, by the time of the permanent custody hearing. In addition, Lane's two sons lived in the same home with Cindy two weeks every month, and both Lane and his eldest son testified that Cindy was a very good mother to the Lane boys, provided appropriate discipline, and was a responsible person. Furthermore, Lane testified that he was committed to his relationship with Cindy and would, likewise, commit to Michael.
 {¶ 30} By the time of the hearing, Cindy had medical insurance through her employment, which would cover any medication and/or counseling required for Michael's behavioral problems, and she had arranged for Thomason to provide in-home counseling once a week with her and her son if he was returned to her care. Cindy and Lane also testified that they had made arrangements with Lane's parents and a neighbor to be present with Michael while they were at work because Michael would be home from school for 1-2 hours before Cindy would come home from work. In addition, although Michael's desires as to where he wanted to live wavered at various times, by the time of the permanent custody hearing, he was not opposed to being reunified with his mother and, in fact, informed the court that he wanted to live with his mom.
 {¶ 31} The sexual allegations were expunged from Cindy's record prior to the hearing, and she regularly attended sex offender treatment with Ferrell. In addition, her inability to pay for counseling without the assistance of the State of Missouri, which required information from the State of Ohio before providing aid, significantly contributed to her delay in obtaining the required counseling. This nearly one-year delay in services was also due in part to the slow pace with which both Ohio and Missouri attended to the necessary paperwork for the Interstate Compact. Although ACCSB maintained that Cindy was not prevented from obtaining the counseling on her own without the assistance of the state, this argument is often hollow, considering the limited income of many parents, including Cindy, who are involved with a children services agency.
 {¶ 32} Given the evidence before the court, we fail to see how the trial court made many of its findings and concluded that severing all parental ties of Cindy to Michael was in Michael's best interest. Furthermore, given her later compliance with the case plan, continued contact with Michael, and demonstrated commitment to remedy her past behavior and provide a suitable home life for Michael, we do not find that clear and convincing evidence existed to show that permanent custody to ACCSB was in Michael's best interest.
 {¶ 33} Lastly, a parent is to be "afforded every procedural and substantive protection the law allows[,]" when the state seeks to terminate that parent's right to the custody of his or her child. In reHayes, supra. This protection was not fully provided to Cindy Crest when the delay in her court-ordered services was solely attributed to her own failure to obtain these services without recognition of their cost and the delay involved in gathering and transmitting the necessary information caused by both of the states involved.
 {¶ 34} Accordingly, the trial court erred in granting permanent custody to ACCSB, and the second assignment of error is sustained.
 Third Assignment of Error {¶ 35} Cindy's third assignment of error challenges the constitutionality of R.C. 2151.414. However, this Court has previously held that "[i]t is axiomatic that courts should not determine the constitutionality of legislative enactments, `unless it is absolutely necessary to do so, and such necessity is absent where other issues are apparent in the record which will dispose of the case on its merits.'"Ahrns v. SBA Communications Corp., Auglaize App. No. 2-01-13,2001-Ohio-2284, 2001 WL 1167240, quoting Greenhills Home Owners Corp. v.Greenhills (1966), 5 Ohio St.2d 207, 212. Given our decision as to the second assignment of error, we do not find it absolutely necessary to determine the constitutionality of R.C. 2151.414(B)(1)(d). Thus, this assignment of error is moot, and, therefore, overruled.
 {¶ 36} For these reasons, the judgment of the Common Pleas Court, Juvenile Division, of Allen County, Ohio, is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
BRYANT, P.J., and CUPP, J., concur.